# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **RUSTY PATYON** and **JUAN SOTO**, | ) | |
| individually and on behalf of all, | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 13 cv 8002 |
| | ) | |
| **KALE REALTY, LLC,** an Illinois limited | ) | |
| liability company, and **VOICESHOT LLC**, | ) | |
| a Delaware limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S SECOND AMENDED MOTION FOR CLASS CERTIFICATION

NOW COME Plaintiffs RUSTY PAYTON and JUAN SOTO ("Plaintiffs"), by and through counsel, and respectfully request the entry of an order certifying this action as a nationwide class action pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), as follows:

Plaintiffs define the Class as follows:

> All persons with cellular telephone numbers nationwide who, on or after October 17, 2009, were sent to their cellular telephone at least one text message by or on behalf of Defendants promoting Kale Realty's goods or services, and who had not previously consented to receiving such text messages.

(*See* Plaintiff's Second Amended Class Action Complaint ("Compl."), Docket No. 134, ¶ 26).

1.      Excluded from the Class are Defendants KALE REALTY, LLC ("Kale Realty") and VOICESHOT LLC ("Voiceshot") (collectively, "Defendants"); any of Defendants' officers, directors, or employees; the presiding judge; and the members of the aforementioned individuals' immediate families.  (*See* Compl., ¶ 27).

Plaintiffs further request that Zimmerman Law Offices, P.C. be appointed counsel for the Class.

In support of this motion, Plaintiffs state as follows:

## NATURE OF THE CASE

2.      In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in response to a growing number of consumer complaints regarding certain telemarketing practices.  The TCPA prohibits, *inter alia*:

> mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> …
>
> to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

*See* 47 U.S.C. § 227(b)(1)(A)(iii).

3.      Congress's use of the word "call" in the statutory text of the TCPA encompasses "text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service."  *See In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14115, ¶ 165 (F.C.C. 2003) (citing *Section 6002(B) of the Omnibus Budget Reconciliation Act of 1993*, 17 F.C.C.R. 12985, 13051 (2002)); *see also Lozano v. Twentieth Century Fox Film Corp.*, 702 F.Supp.2d 999, 1009 (N.D. Ill. 2010) (holding that section 227 of the TCPA applies to text messages); *Strickler v. Bijora, Inc.*, 11 CV 3468, 2012 WL 5386089, *4-5 (N.D. Ill. Oct. 30, 2012) (same).

4.      Despite these measures, illegal calls continue to be a widespread problem. *See, e.g.*, *In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 1830, 1839, ¶ 22 (F.C.C. 2012) ("Since the TCPA's enactment and the

adoption of implementing rules, the Commission has continued to receive thousands of complaints regarding unwanted telemarketing robocalls.") There is a huge incentive for companies like Defendants to skirt the law and push its boundaries because automated text message advertisements are a powerful tool for exerting their will on the targets of their campaigns. These messages can be dispatched *en masse* for very little cost, and the repeated intrusions ultimately goad many of the targets to give in. *Cf. In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 562, ¶ 7 (F.C.C. 2008) (explaining that "Congress found that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls, and that such calls can be costly and inconvenient").

5. On or about October 17, 2013, each Plaintiff received an unsolicited text message on his cellular telephone. (*See* Compl., ¶ 15; *see also* text message, attached as Exhibit A to Compl.). This text message was also sent to hundreds, if not thousands, of Class members. (*See* Compl., ¶ 15).

6. Defendants are responsible for sending or causing the sending of the text message (Exhibit A to Compl.) that each Plaintiff and the Class members received. (*See* Compl., ¶ 16).

7. Kale Realty utilized Voiceshot's services relative to the text message that Plaintiffs and the Class members received. (*See* Compl., ¶ 17). Kale Realty caused the text message to be sent to Plaintiffs' and the Class members' cellular telephones, as Kale Realty directed and authorized Voiceshot to send said text message to Plaintiffs' and the Class members' cellular telephone numbers, which were stored and/or produced in an automatic telephone dialing system. (*See* Compl., ¶ 18). Kale Realty developed the content of the text message, and provided that content to Voiceshot along with the cellular telephone numbers to

which Kale Realty directed Voiceshot to send the text message.  (*See* Compl., ¶ 18).

8.      Kale Realty encouraged and/or prompted Voiceshot to send the text message to Plaintiffs' and the Class members' cellular telephone numbers on Kale Realty's behalf.  (*See* Compl., ¶ 19).  Kale Realty authorized Voiceshot to use Kale Realty's trade name, website, and business information in the text message that Voiceshot sent to Plaintiffs' and the Class members' cellular telephone numbers, and said text message contains Kale Realty's trade name, website, and business information.  (*See* Compl., ¶ 20).  Kale Realty knew that Voiceshot sent the text message to Plaintiffs' and the Class members' cellular telephone numbers, and Class members contacted Kale Realty as a result of receiving the text message.  (*See* Compl., ¶ 21).

9.      Kale Realty generated economic benefit through Voiceshot's services, and Kale Realty knowingly accepted the benefits of the unsolicited text message that Voiceshot sent to Plaintiffs and the Class members.  (*See* Compl., ¶ 22).  Kale Realty, whose products or services were advertised in the text message, knowingly derived economic benefit from the sending of the message.  (*See* Compl., ¶ 23).

10.     Neither Plaintiff ever gave to Defendants, nor did Defendants ever receive, either Plaintiff's prior express written consent to receive text messages on his cellular telephone for the purpose of receiving the text message (Exhibit A to Compl.).  (*See* Compl., ¶ 24).

11.     On information and belief, Defendants sent the text message to Plaintiffs as a part of a mass broadcasting of text messages, whereby Defendants transmitted identical unsolicited text message advertisements to hundreds, if not thousands, of other persons.  (*See* Compl., ¶ 25).

12.     A private remedy is provided by section 227(b)(3) of the TCPA, which provides, in relevant part:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater …

…

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

*See* 47 U.S.C. § 227(b)(3).

## CLASS CERTIFICATION REQUIREMENTS

13.     Class actions encourage individuals—who might otherwise lack incentive to file individual actions because their damages are limited—to join with others in a single action to vindicate their rights. *Hansberry v. Lee*, 311 U.S. 32, 41 (1940); *Phillips Petroleum v. Shutts*, 472 U.S. 797, 808-09 (1985) ("Class actions ... permit the Plaintiffs to pool claims which would be uneconomical to litigate individually.  [In such a case,] most of the Plaintiffs would have no realistic day in court if a class action were not available.").  Such cases aggregate "the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1977).

14.     To achieve class certification, a plaintiff must demonstrate that Rule 23(a)'s four prerequisites are satisfied: (1) that the proposed class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the representative party are typical of the claims of the class; and (4) that the representative party will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

15.     To certify a class under Rule 23(b)(3), the Plaintiff must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Additionally, pursuant to Fed. R. Civ. P. 23(g) the court must appoint class counsel.

16.     This case satisfies the requirements of Rule 23(a), (b)(3), and (g).

17.     **Numerosity.**  To satisfy the numerosity requirement, a class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "When the class is large, numbers alone are dispositive. ..."  *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986).  Where the class numbers at least 40, joinder is generally considered impracticable.  *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill 2002).  Here, upon information and belief, there are hundreds, if not thousands, of alleged TCPA violations at issue.  (*See* Compl., ¶¶ 15, 25, 28, 36).  Even if Defendants dispute that number, the Court "may rely on common sense assumption or reasonable inferences" based on known facts.  *Streeter v. Sheriff of Cook County*, 256 F.R.D. 298, 300 (N.D. Ill. 2008); *see also Hickey v. Voxernet LLC*, 887 F.Supp.2d 1125, 1130 (W.D. Wash. 2012) ("Plaintiff's allegation regarding the generic content and automatic generation of the message is sufficient to infer the use of an [automatic telephone dialing system]").

Here, given the length of the class eligibility period and the advertising methods of Defendants—namely, automatic, uniform, *en masse* dialing of cellular telephones—a common sense assumption or reasonable inference exists that there are at least 40 Class members.  Thus, the numerosity requirement is satisfied.

18. **Commonality.** Rule 23(a)'s second requirement is that there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This "commonality" requirement is satisfied by showing "a common nucleus of operative fact." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Where a question of law involves "standardized conduct of the defendant toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement of Rule 23(a)(2) is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988) (same); *see also Keele*, 149 F.3d at 594 (the defendant "engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters"). This is true even though the nature and amount of damages may differ among the members of the Class. *Heastie v. Community Bank*, 125 F.R.D. 669, 678-79 (N.D. Ill. 1989).

Here, Defendants engaged in standardized conduct involving a common nucleus of operative facts. On information and belief, Defendants sent unsolicited text messages to Plaintiffs and hundreds, if not thousands, of others as a part of a mass advertising scheme. *See G.M. Sign, Inc. v. Brink's Mfg. Co.*, 09 C 5528, 2011 WL 248511, *6 (N.D. Ill. Jan. 25, 2011) (finding that sending mass amounts of advertising faxes to businesses constituted a "standardized course of conduct," establishing commonality).

The case involves common fact questions about Defendants' alleged TCPA violations and common legal questions under the TCPA, such as:

(a) Whether Defendants' distribution of the unsolicited text messages violates the TCPA;

(b) Whether Plaintiffs and Class members are entitled to treble damages based on the willfulness of Defendants' conduct; and

(c) Whether the conduct alleged herein above violated Class members' right to privacy.

(*See* Compl., ¶ 29).

Defendants' alleged failure to comply with the TCPA is the same for each person to whom Defendants sent an unsolicited text message using an automatic telephone dialing system; thus, each Class member has the same claim. *See, e.g.*, *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 104 (N.D. Ill. 2013), *reconsideration denied*, 12 C 4415, 2013 WL 3872171 (N.D. Ill. July 29, 2013) ("[The plaintiff's] claim arises from the same course of conduct that gives rise to the claims of the other class members and his claims are based on the same legal theory. Namely, [the defendant] used an automatic telephone dialing system to call [the plaintiff] and every other class members' cellular telephone while undertaking to collect debts on behalf of [another] in violation of the TCPA.").

Accordingly, whether Defendants violated the TCPA and whether the TCPA violations were willful depends on the common facts involving Defendants' activities, and not the activities of Plaintiffs or the Class members.

19. **Typicality.** Rule 23(a)'s third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted). In the context of the TCPA, courts have found that a plaintiff has satisfied the typicality requirement when the defendant has sent identical or similar advertisements in a comparable manner to recipients who formed the proposed class. *See G.M. Sign, Inc.*, 09 C 5528, 2011 WL 248511, *6.

In this case, typicality is inherent in the Class definition because each Class member, including each of the Plaintiffs, was subjected to the same conduct. Each Class member's claim is based on the same legal theory as Plaintiffs'—namely, Plaintiffs received text messages from Defendants without providing his prior express consent to do so. Like the plaintiff in *G.M. Sign*, Plaintiffs have alleged that advertisements were sent by Defendants in the same manner to all putative Class members. (*See* Compl., ¶¶ 15-16, 18, 25, 36-37). Plaintiffs' TCPA claim arises from those text messages, which is the basis for the potential Class members' TCPA claims. Thus, Rule 23(a)(3)'s "typicality" requirement is satisfied.

20.   **Adequacy of Representation — Rule 23(a)(4) Adequacy Requirement.** Rule 23(a)'s final requirement is that the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The burden of showing sufficient interest is relatively modest." *Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290, *4 (N.D. Ill. 2008). The "adequacy" requirement is met when the class representative's interests are not antagonistic to or in conflict with those of the other class members. *Uhl v. Thoroughbred Tech. and Telecom., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). "As long as the plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent decisions based upon his lawyer's advice, there is no reason that he may not delegate further factual and legal investigation to his attorneys." *Nielsen v. Dickerson*, 1999 WL 350649, *7 (N.D. Ill. 1999).

Here, Plaintiffs understand the obligations of a class representative, the nature of the claims that are involved in the litigation, and have an interest in representing the Class and enforcing the TCPA.

Furthermore, Plaintiffs and the other Class members all seek statutory damages under the TCPA. Given the identity of claims between Plaintiffs and the Class members, there is no

potential for conflicting interests. There is no antagonism between the interests of Plaintiffs and those of the other Class members, which is the key factor to determine whether a plaintiff is an adequate representative. Therefore, Rule 23(a)(4)'s "adequacy" requirement is satisfied.

21. **Adequacy of Representation — Rule 23(g) Class Counsel Adequacy Requirement.** Class counsel's adequacy is determined by four factors: (i) the work counsel has done in identifying or investigating potential claims; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A). Here, Plaintiffs' counsel has thoroughly discovered the ins-and-outs of Defendants' alleged TCPA violations. Plaintiffs' counsel are experienced class action lawyers. They have been appointed as lead or co-lead counsel in numerous nationwide class actions and have recovered substantial monies for their clients and class members. Of note, Plaintiffs' counsel has also successfully represented defendants in class action lawsuits. Further, Plaintiffs' counsel is very knowledgeable about the TCPA, and have been appointed class counsel in several TCPA class actions. Finally, Plaintiffs' counsel have significant financial and administrative resources to prosecute this matter on behalf of the Class. (See, Declaration of Thomas A. Zimmerman, Jr., attached hereto as Exhibit 1, and Plaintiffs' counsel's website www.attorneyzim.com).

22. **Predominance.** Rule 23(b)(3) requires that Plaintiffs show that common questions of law or fact predominate over any individual questions. For the reasons discussed above regarding commonality and typicality, there is no reason to believe that any individual question will predominate over the common questions in this litigation. Common legal issues predominate because the Class members' claims arise under the same federal statute: the TCPA. Common fact issues predominate because the Class members' claims are focused on Defendants'

conduct of sending unsolicited text messages to Plaintiffs and the Class, in violation of section 227(b)(1)(A)(iii) of the TCPA.

23.     **Superiority.**  Finally, Fed. R. Civ. P. 23(b)(3) requires that a class action be the superior method of adjudicating the claims at issue.   Generally speaking, efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented.  *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545, 547 (N.D. Ill. 1972).   The court determines the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy.  *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D. Ill. 1992).  It is proper for a court, in deciding the "best" available method, to consider the "[i]nability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually."  *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

Here, allowing the case to proceed as a class action will be an efficient use of judicial resources and will be superior to individual lawsuits.  From the perspective of the Court system, filing numerous cases against Defendants would be unduly burdensome to the courts, and judicial efficiency would be greatly promoted by the adjudication of identical claims through a single proceeding.

From the perspective of the Class members, a class action is a superior means of resolving the issues regarding Defendants' TCPA violations, especially when compared to individual actions, because the statutory recovery for each Class member is only $500.  Additionally, it is unlikely that consumers who received Defendants' text message advertisements are aware of their rights under the TCPA, and thus, a class action ensures that all Class members' rights are protected.  Allowing this case to proceed as a class action will be an

efficient use of judicial resources and will be superior to individual lawsuits, especially considering the large number of potential individual lawsuits.

Further, several cases seeking damages under the TCPA have been certified in this District. *See, e.g.,*

    (i)    *Strickler v. Bijora, Inc.*, No. 11 CV 3468 (N.D. Ill. March 15, 2012) (Norgle, J.) (*en masse* unsolicited text message advertisements);

    (ii)    *Mitchem v. Illinois Collection Serv., Inc.*, 271 F.R.D. 617, 618-19 (N.D. Ill. 2011) (automatic telephone dialing system with a prerecorded voice message);

    (iii)    *The Savanna Group vs. Truan*, No. 10 CV 07995 (N.D. Ill. February 20, 2013) (St. Eve, J.) (fax blast case);

    (iv)    *Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F.Supp.2d 894, 901 (N.D. Ill. 2010) (fax blast case);

    (v)    *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 143 (N.D. Ill. 2009) (fax blast case);

    (vi)    *Hinman v. M & M Rental Ctr., Inc.*, 545 F.Supp.2d 802, 808 (N.D. Ill. 2008) (fax blast case); and

    (vii)    *G.M. Sign, Inc. v. Franklin Bank, S.S.B*, 06 CV 949, 2008 WL 3889950, *7 (N.D. Ill. Aug. 20, 2008) (fax blast case).

In sum, all of Rule 23's requirements are satisfied in the present case.

WHEREFORE, because the proposed Class meets the requirements of Rules 23(a), (b)(3), and (g), Plaintiffs request that the Court (i) certify the class, (ii) appoint Plaintiffs as the Class representatives, (iii) appoint Plaintiffs' attorneys as Class counsel, and (iv) for any other relief the Court deems just.

Plaintiffs RUSTY PAYTON and JUAN SOTO, individually, and on behalf of all others similarly situated,


By:    s/Thomas A. Zimmerman, Jr.                

       Thomas A. Zimmerman, Jr. (IL #6231944)
       Adam M. Tamburelli (IL #6292017)
       Matthew C. De Re (IL #6317913)
       ZIMMERMAN LAW OFFICES, P.C.
       77 West Washington Street, Suite 1220
       Chicago, Illinois 60602
       (312) 440-0020 telephone
       (312) 440-4180 facsimile
       www.attorneyzim.com

Counsel for Plaintiffs and the Class

# ZIMMERMAN LAW OFFICES, P.C.

Since 1996, Zimmerman Law Offices has represented individuals and businesses in a wide array of legal matters. Its attorneys are established and respected trial lawyers who represent clients in individual and class action lawsuits nationwide, and represent professionals across Illinois in state and federal licensure hearings, in the following areas:

- <u>Class-Action Lawsuits</u> — Represent clients nationwide in lawsuits involving defective products, fraud and misrepresentation, misleading claims, billing fraud, insurance denials, and failure to honor warranties.

- <u>Consumer Rights / Fraud</u> — Represent individuals who have suffered financially due to misrepresentation, fraud, and illegal business practices.

- <u>Defective Products</u> — Recover damages for plaintiffs who have suffered physical injury or economic loss as a result of dangerous drugs and defective products.

- <u>Business Litigation</u> — Effective representation of plaintiffs and defendants in commercial disputes, including contract and transactional disputes, as well as commercial and real estate litigation.

- <u>Federal and State Licensure</u> — Represent clinical labs and staff licensed by the U.S. Department of Health and Human Services with regulatory issues, and work with medical professionals, real estate brokers, insurance producers, banks, and other professionals in obtaining or defending their professional licenses.

- <u>Personal Injury</u> — Hold negligent parties accountable for workplace injuries, catastrophic car accidents, and injuries from dangerous or defective products.

- <u>Malpractice and Negligence</u> — Prevail on behalf of victims of medical malpractice and negligence, the firm has a solid record of holding doctors, hospitals, dentists, pharmacists, and nursing homes accountable for errors and negligent care leading to injury and death.

- <u>Wrongful Death</u> — Represent the family members of individuals who have been killed in fatal accidents caused by another person or party's negligence.

The firm has an extensive and varied litigation-based practice, with a focus on class action litigation. Zimmerman Law Offices has recovered over $150 million on behalf of millions of individuals and businesses nationwide.

**EXHIBIT 1**

# ATTORNEYS

## Thomas A. Zimmerman, Jr.

A seasoned litigator, Mr. Zimmerman practices extensively and has obtained multi-million dollar jury verdicts in class action, corporate, commercial, medical malpractice, consumer fraud, general civil, product liability, toxic tort, and other complex litigation. He represents both plaintiffs and defendants nationwide in state and federal trial and appellate courts. He also represents individuals and corporations in transactional matters, and before state and federal administrative and regulatory agencies.

Mr. Zimmerman has been lead counsel in national and state-wide class action litigation, and has handled other multi-party litigation involving such companies as MCI/Worldcom, United Airlines, Peoples Gas, AT&T, Warner-Lambert, Pfizer, Liberty Mutual Insurance Co., DaimlerChrysler, Commonwealth Edison, Ameritech, and Bridgestone/Firestone. He is well respected for his representation of physicians, dentists, nurses, psychologists, veterinarians, and many other licensed professionals before state and federal agencies including the Illinois Department of Financial and Professional Regulation, and the U.S. Department of Health and Human Services.

In 2000, he was voted one of the Top 40 Illinois Attorneys Under the Age of 40. This is especially notable, as he was chosen out of 60,000 attorneys in Illinois under the age of forty.

In 2003, the Illinois Supreme Court appointed Mr. Zimmerman to the Review Board of the Attorney Registration and Disciplinary Commission ("ARDC"). He served in that capacity until 2011, wherein he presided over appeals by attorneys who have been found to have committed misconduct, and recommended discipline for their ethical violations. In 2013, the ARDC appointed Mr. Zimmerman as Special Counsel, wherein he conducts independent investigations in matters involving allegations of misconduct against attorneys associated with the ARDC.

Additionally, the Illinois Governor appointed Mr. Zimmerman to the Illinois Courts Commission. A Commission member presides over proceedings wherein judges are charged with committing ethical violations, and imposes discipline on judges who are found to have engaged in misconduct.

Prior to becoming an attorney, Mr. Zimmerman worked for AT&T where he negotiated partnerships with companies for domestic and international joint-venture and new product development activities. During this time, he was the featured speaker at 400 conferences, seminars, and presentations. Thereafter, he presented oral testimony at various Federal Senate and Congressional hearings. After obtaining his law license, Mr. Zimmerman has lectured at law schools and seminars, and is frequently interviewed by the news media concerning legal issues.

Mr. Zimmerman earned a B.S. in computer science-mathematics from the University of Illinois, and an M.B.A. in finance from DePaul University in the evenings while working for AT&T. After leaving AT&T, Mr. Zimmerman earned his law degree from the Chicago-Kent College of

Law, where he was a Ramsey-Burke Scholarship recipient and earned the Academic Achievement Award.

He is admitted to practice law in Illinois, and other states on a case-by-case basis, and he is admitted to practice before the U.S. Supreme Court, federal courts of appeal, and federal district courts. Based on his demonstrated experience and ability, he was appointed to the federal court trial bar.

Mr. Zimmerman is currently the chair of the Clerk of the Circuit Court of Cook County Attorney Advisory Committee, and was formerly co-chair of the Clerk of the Circuit Court Transition and Strategic Planning Public Policy Subcommittee.

Mr. Zimmerman is a member of the American, Illinois State, and Chicago Bar Associations, and the Illinois Trial Lawyers Association, where he serves on various committees. He is also a member of the American Association for Justice. In 2000, he was appointed to the Illinois Trial Lawyers Association Board of Advocates.

Involved in numerous community service activities, Mr. Zimmerman has been an Illinois State Board of Education surrogate parent of disabled children since 1988. In addition, he was a speaker on the rights of disabled people for the Illinois Planning Council on Developmental Disabilities, and a Family Shelter Service counselor to battered children for many years. He has been recognized by the federal court for his pro bono representation of indigent clients.


**<u>Adam M. Tamburelli</u>**

Mr. Tamburelli represents both plaintiffs and defendants in class action, corporate, commercial, medical malpractice, consumer fraud, general civil, product liability, and other complex litigation. He practices nationwide in state and federal trial and appellate courts. He also represents individuals and corporations in transactional matters, and before administrative and regulatory agencies.

Mr. Tamburelli's experience also includes handling the defense of individuals and companies in cases involving personal injury, employment, civil rights, and commercial disputes involving all phases of litigation, including extensive discovery and substantive motion practice.

Mr. Tamburelli was a law clerk for judges in both the trial and appellate courts. He clerked for Justice Margaret O'Mara-Frossard of the Illinois Appellate Court, and he was the sole judicial clerk for Judge Michael K. Hegarty of the 53rd District Court in Michigan.

He earned a B.S. from Central Michigan University. He received his law degree from the Chicago-Kent College of Law, where he was regularly on the Dean's List. Based on his outstanding academic achievement in law school, he was selected by the law school faculty to be a teaching assistant.

Mr. Tamburelli has also been involved in valuable community service activities. While in law school, he volunteered for a low-income taxpayer program, where he helped indigent people resolve their tax problems. He was also a volunteer for the Michigan Department of Attorney General, where he assisted in prosecuting violations of liquor control laws.

He is admitted to practice in the State of Illinois, as well as the U.S. District Courts for the Northern District of Illinois and the District of Colorado. He is a member of the Chicago Bar Association, where he serves as the Seminar Coordinator for the Class Litigation Committee, and is a member of the Illinois State Bar Association.


## Matthew C. De Re

Mr. De Re advocates for both plaintiffs and defendants nationwide in state and federal trial and appellate courts. His practice areas include class action, corporate, commercial, consumer fraud, general civil, product liability, personal injury, and other complex litigation. He also represents professionals, such as physicians, dentists, nurses, insurance producers, and real estate brokers, before state and federal agencies, including the Illinois Department of Financial and Professional Regulation and the Department of Insurance. In addition to his extensive litigation practice, Mr. De Re assists individuals and corporations in transactional matters.

He has experience in all phases of litigation, including extensive discovery and substantive motion practice. He has assisted in the defense of individuals and companies in cases involving personal injury, employment, and civil rights. Mr. De Re has also vigorously pursued recovery for plaintiffs in numerous civil matters. Prior to joining Zimmerman Law Offices, he served as a Law Clerk for the Circuit Court of Cook County.

Mr. De Re graduated from the University of Wisconsin-Madison with a B.S. in both political science and history. He earned his law degree from Washington University in St. Louis. While in law school, he received academic awards and appeared on the Dean's List multiple times. He also served two years on the Executive Board of the Student Bar Association and was the Associate Managing Editor for the Washington University Journal of Law & Policy.

He is admitted to practice law in the State of Illinois and is a member of the Illinois State and Chicago Bar Associations.


## Nickolas J. Hagman

Mr. Hagman is licensed to practice law in both the State of Illinois and the State of Wisconsin where he represents clients in state and federal courts. Mr. Hagman represents plaintiffs and defendants in cases involving class action, general civil, commercial, consumer fraud, corporate, product liability, personal injury, and other complex litigation issues. Additionally, Mr. Hagman represents licensed professionals, including physicians, dentists, nurses, insurance producers, and real estate brokers, before state and federal agencies, including the Illinois Department of Financial and Professional Regulation and the Department of Insurance.

Mr. Hagman graduated magna cum laude from the University of Minnesota-Twin Cities with a bachelor's degree in both Political Science and Spanish. He earned his law degree from Marquette University Law School in Milwaukee, Wisconsin. While in law school, he received academic awards and appeared on the Dean's List multiple times. He participated in several moot court competitions and also served for two years as Associate Editor of the Marquette Law Review.

Prior to joining Zimmerman Law Offices, he served as a Judicial Law Clerk for several judges in the Milwaukee County Circuit Court in Wisconsin. He is a member of the Illinois, Wisconsin, Chicago, and Milwaukee Bar Associations.

## REPRESENTATIVE CLASS ACTION CASES

### Completed Cases

*Misleading Product Claims* — $62 million recovery for a nationwide class of customers who purchased products that were advertised to reduce cellulite in the human body, plus equitable relief to correct the misleading claims. *Joseph v. Beiersdorf North America, Inc.*, No. 11 CH 20147 (Cook Cnty, Ill.).

*Improper Cellular Phone Fee* — $48 million recovery for a statewide class of businesses and individuals who paid an improper municipal infrastructure maintenance fee on their cellular phone bills. *PrimeCo Personal Communications, et al. v. Illinois Commerce Commission, et al.*, 98 CH 5500 (Cook Cnty, Ill.).

*Misleading Newspaper Circulation* — $31 million recovery for a nationwide class of businesses and individuals who placed advertisements in a newspaper based on fraudulent circulation figures. *In re Chicago Sun-Times Circulation Litigation*, No. 04 CH 9757 (Cook Cnty, Ill.).

*Power Outages* — $7.75 million recovery for a statewide class of businesses and individuals who sustained financial damages due to widespread and prolonged power outages. *In re Commonwealth Edison 1999 Summer Power Outages*, No. 99 CH 11626 (Cook Cnty, Ill.).

*Unsolicited Faxes* — $4 million recovery for a nationwide class of businesses and individuals who sustained damages resulting from the receipt of unsolicited facsimile advertisements. *Derose Corp. v. Goyke Health Center*, 06 CH 6681 (Cook Cnty, Ill.).

*Misleading Product Labeling* — $3.5 million recovery for a nationwide class of Spanish speaking purchasers of baby formula, arising out of misleading product labeling. *Cardenas v. Mead Johnson & Company*, No. 01 CH 11151 (Cook Cnty, Ill.).

*Misrepresentations in Book* — $2.35 million recovery for a nationwide class of customers who purchased a fictional book while under the impression that the book was a non-fiction memoir. *In re A Million Little Pieces Litigation*, No. 06-md-1771 (S.D. NY).

*Improper Debiting of Bank Accounts* — $1.5 million recovery for a statewide class of individuals who were members of a health club that debited its members' bank accounts without adequate notice or authority. *Wendorf, et al. v. Landers, et al.*, No. 10 cv 1658 (N.D. Ill.).

*School Misrepresenting Accreditation* — $1.2 million recovery, representing nearly the full value of each class member's loss, for a statewide class of individuals who enrolled in a school based on the school's misrepresentations that it was accredited. *Allen v. Illinois School of Health Careers, Inc.*, No. 10 CH 25098 (Cook Cnty, Ill.).

*Privacy Violation* — $1 million recovery for a nationwide class of consumers whose personal information was improperly disclosed. *Radaviciute v. Christian Audigier, Inc.*, No. 10 cv 8090 (N.D. Ill.).

*Privacy Violation* — $500,000 recovery for a statewide class of consumers whose personal information was improperly disclosed. *Aliano v. Joe Caputo and Sons – Algonquin, Inc.*, et al., No. 09 cv 0910 (N.D. Ill.).

*Contaminated Drinking Water* — $500,000 recovery for a statewide class of individuals who suffered damages as a result of a contaminated water well, plus equitable relief to close the well. *Joseph Marzano v. Village of Crestwood*, No. 09 CH 16096 (Cook Cnty, Ill.).

*Privacy Violation* — $295,000 recovery for a nationwide class of consumers whose personal information was improperly disclosed. *Joseph v. Marbles, LLC*, No. 13 cv 4798 (N.D. Ill.).

*Privacy Violation* — $250,000 recovery for a nationwide class of consumers whose personal information was improperly disclosed. *DiParvine v. A.P.S., Inc. d/b/a Car Quest Auto Parts*, No. 11 cv 6116 (N.D. Ill.).

*Unsolicited Faxes* — $237,600 recovery for a statewide class of individuals and businesses who sustained damages resulting from the receipt of unsolicited facsimile advertisements. *Phillips Randolph Enterprises, LLC v. Key Art Publishing Co.,* No. 07 CH 14018 (Cook Cnty, Ill.).

*Improper Health Club Memberships* — $138,000 recovery for a statewide class of individuals whose health club membership agreements provided for improper membership terms. *Izak-Damiecki v. World Gym International, LLC*, No. 10 CH 18845 (Cook Cnty, Ill.).

*Privacy Violation* — Recovery for a nationwide class of over 36 million consumers whose personal information was improperly disclosed. *Dudzienski v. GMRI, Inc.*, No. 07 cv 3911 (N.D. Ill.).

*Unsolicited Faxes* — Recovery for a statewide class of individuals and businesses who sustained damages resulting from the receipt of unsolicited facsimile advertisements. *Phillips Randolph Enterprises, LLC v. Home Run Inn, Inc.*, No. 08 CH 43273 (Cook Cnty, Ill.).

*Privacy Violation* — Recovery for a statewide class of over 60,000 consumers whose personal information was improperly disclosed. *O'Brien v. Paninos, Inc.*, No. 10 cv 2991 (N.D. Ill.).

*Privacy Violation* — Recovery for a nationwide class of tens of thousands of consumers whose personal information was improperly disclosed. *In re Kathy Aliano v. Hancock Fabrics, Inc.*, No. 07-10353 (Del. Bkpt).

*Breach of Warranty* — Recovery on behalf of a nationwide class of customers who had their warranty retroactively changed from a lifetime guarantee to a 90-day guarantee, plus equitable relief to reinstate the lifetime guarantee on the products. *Brady, et al. v. Learning Curve Int'l, Inc., et al.*, No. 06 CH 03056 (Cook Cnty, Ill.).

## Pending Cases – Appointed Interim Co-Lead Counsel

*Environmental Contamination* — Class action for a statewide class of individuals and businesses who are suffering from an infiltration of coal and petroleum coke dust in the air and on their property. *Martin, et al. v. KCBX Terminals Company, et al.*, No. 13 cv 08376 (N.D. Ill.).

*Unauthorized Charges* — Class action for a statewide class of bus and train riders who have been assessed unauthorized and improper fees and charges. *In re Ventra Card Litigation*, 13-cv-07294 (N.D. Ill.).

*Misleading Product Claims* — Class action for a nationwide class of individuals who were sold submarine sandwiches materially shorter than advertised. *In re: Subway Footlong Sandwich Marketing and Sales Practices Litigation*, No. 2:13-md-02439 (E.D. Wis.).

## Pending Cases – Appointed Class Counsel In Contested Class Proceedings

*Failure to Disclose Contract Terms* — Class Action for a statewide class of individuals who obtained loans from a business that failed to provide adequate disclosures as to the terms of the loans. *Yi, et al. v. T.N. Donnelly & Co.*, No. 09 CH 31997 (Cook Cnty, Ill.). **Obtained Summary Judgment on Behalf of the Class.**

*Failure to Disclose Contract Terms* — Class Action for a statewide class of individuals who obtained loans from a business that failed to provide adequate disclosures as to the terms of the loans. *Papeck v. New York Jewelers, Inc.*, No. 09 CH 31995 (Cook Cnty, Ill.).

## Pending Cases

*Defective Product* — Class action for a nationwide class of individuals who sustained financial and personal injuries resulting from their purchase and use of baby wipes that were tainted with a dangerous bacteria.

*Misleading Product Claims* — Class action for a nationwide class of individuals who purchased a product that advertised it had a larger quantity than was actually provided to the purchaser.

*Misleading Product Claims* — Class action for a nationwide class of individuals and businesses who purchased a product that advertised it was made of higher quality ingredients than were actually contained in the product.

*Misleading Product Claims* — Class action for a nationwide class of individuals and businesses who purchased a software product that advertised it could perform functions that it actually did not perform.

*Defective Product* — Class action for a nationwide class of individuals who purchased a defective home security system that could be easily hacked and disabled.

*Misleading Product Labeling* — Class action for a nationwide class of individuals who purchased a product whose packaging misstated the characteristics of the product.

*Data Breach* — Class action for a statewide class of individuals who had their personal, financial, and medical data stolen due to insufficient protection of that information by a hospital.

*Negligence* — Class action for a statewide class of individuals who were secretly video recorded while they were in private tanning rooms at a health club.

*Privacy Violation* — Class action for a nationwide class of 194,000 consumers whose personal information was improperly disclosed.

**NOTE:** This list of cases is a representative sample of some of the class action lawsuits. It is not an exhaustive list.